# SECURITY TRUST COMPANY v. ST. PAUL BUILDING COMPANY and Another.[1]

December 22, 1911.

Nos. 17,369—(91).

**Fencing hoists — statute construed.**

> Section 1815, R. L. 1905, which requires the protection of hoists by the erection of barriers at each floor, includes hoists erected on the outside and adjacent to a building in the process of erection; and the statute was intended to prevent persons on the hoist from getting off under dangerous circumstances, as well as for the protection of persons liable to fall into the shaft from the building.

**Contributory negligence — evidence.**

> The evidence was not conclusive that plaintiff's intestate was guilty of contributory negligence in going upon the hoist while at rest, and in attempting to get off at the time it started.

Action in the district court for Ramsey county by the administrator of the estate of George E. Miller, deceased, to recover $5,000 for the death of his intestate.  The action was tried before Brill, J., who at the close of plaintiff's case granted a motion to dismiss the

[1] Reported in 133 N. W. 861.

action as to defendant Morrisette, and at the close of the trial granted the motion of defendant building company for a directed verdict in its favor. From an order denying plaintiff's motion for a new trial, it appealed. Reversed.

*Barton & Kay,* for appellant.

*Price Wickersham,* for respondent.

LEWIS, J.

Defendant corporation was engaged in constructing a four-story building for the Golden Rule Company in the city of St. Paul. On the sidewalk outside of the building it erected and operated a hoist for the purpose of carrying materials to the different stories and to the roof. The hoist was double, and two lifts were operated within a shaft constructed of timbers, and it was so arranged that one lift went up as the other went down. The lifts were controlled by a cable attached to an engine located on the ground near the base of the hoist.

An electric bell was located in the engine house and connected by wire with the roof, where a push button was placed adjacent to the shaft. One ring was the signal to the engineer to move the hoists, and it was the practice to make a full trip to the top before returning to the ground. A boy under sixteen years of age, named Mann, was in charge of the bell, and it was his duty to push the button when given the signal to start the car. A young man named Ablitt was stationed at the top of the shaft on the roof, whose business it was to take off the material sent up to that point and to put on empty wheelbarrows. He also gave the signal to Mann when to push the button.

Such was the system in operation on the day of the accident. The plastering had been let to a subcontractor, and plaintiff's intestate, George Miller, was in his employ. One of the lifts left the ground with a wheelbarrow full of gravel destined for the top, but two laborers got on, and it was stopped by the engineer at the fourth floor, where the laborers got off. As they stepped off, Miller got on, and was caught between the floor of the ascending lift and a cross-brace

of the shaft, and caused to fall down the shaft to the ground, and was killed.

Defendant was charged with three specific acts of negligence: First, in violating the statute which requires all hoists and elevators to be guarded by barriers; second, in violating the statute which forbids the employment of children under sixteen years of age in operating or assisting in operating any elevator; third, in negligently operating the hoists, without a proper system of signals, and without properly warning the deceased at the time the car was started. At the close of all of the evidence the trial court directed a verdict for the defendant.

1. The evidence was ample that, not only defendant's employees, but the employees of the subcontractors, including the plasterers, rode upon the hoist in going to and from their work and in carrying material. The hoist was about three feet distant from the building, and was connected by a platform built out from each story. There was nothing to prevent a person from going out of the building over the platform onto the hoist when it was at rest opposite any floor.

Section 1815, R. L. 1905, requires every hoisting apparatus used in the construction of any building to be securely protected on each floor by a barrier at least four feet high, which shall be kept closed except when necessarily opened for use. This statute applies to all hoists, whether erected within or without the building being constructed. It is not only designed for the protection of persons liable to fall into a shaft or elevator well, but it is designed to prevent any accident to those who may be in an elevator or upon a hoist by attempting to get off at the wrong time. There is quite as much call for such a preventive measure in the one case as in the other. The distinction was referred to in Tostason v. Minneapolis T. M. Co. 113 Minn. 394, 129 N. W. 593. The failure of defendant to comply with the statute constituted negligence per se. Christianson v. Northwestern Compo-Board Co. 83 Minn. 25, 85 N. W. 826, 85 Am. St. 440, and followed in several later cases.

2. Ablitt testified that the west hoist came up and stopped at the fourth floor, that it was loaded with a wheelbarrow full of gravel and two men, that he looked down and saw the men get off and Miller

get on, that he called out "All right below," and then gave the signal to Mann to push the button. He did so, and the car soon started.

"Q. Now, in what position was Miller when you observed the elevator starting? A. When I seen Miller, before the elevator started, he had his right hand on the ledger, on that brace, before the elevator started, and after the elevator started he had his hand off of there and was getting off. * * * The way I mean was when the elevator started he had one foot on the platform and one off, when it caught him; that is where it started from; that is the way it started. He was in that position when the elevator started. I won't say he was right off the elevator before it started, but almost."

The witness further testified that Miller struck a brace just as the car started. Miller had been at work about one week, and at the time he was hired his employer told him that they used the ladders, and the ladders only, at that time. He was then shown to the fourth floor by way of the ladders on the inside of the building.

There was no evidence that Miller ever rode on the hoists before, and no permission was ever expressly given to ride on them to any of the employees of the subcontractors. But the evidence was sufficient to warrant the conclusion that men employed by subcontractors were in the habit of riding on them without objection. Although Miller may not have ridden on any previous occasion, the practice of so doing by other workmen was open to his observation. On the day in question lime had spattered in his eye, and he had to visit an oculist, and was leaving the building at about the time of beginning work in the afternoon. He was on the fourth floor, had put on his street clothes, and carried his overalls in a bundle under his arm. Access to the hoist was easy, and under the circumstances his decision to avail himself of that means of reaching the ground does not conclusively make out a case of negligence on his part.

His conduct after getting on the hoist presents a closer question. That he expected the hoist to go down without first going to the top is quite probable. He may not have heard the signal, or, if he did, may not have understood it. There being some delay in starting, he may have changed his mind, and attempted to get off just as the

hoist started; or, expecting to go down, and noticing the hoist begin to rise, he may have attempted to get off after it started. Whether he failed to act with reasonable care under the circumstances, and was guilty of negligence, did not conclusively appear from the evidence, and the question should have been submitted to the jury.

Reversed.